IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

H.J. HEINZ COMPANY,

      Plaintiff/Counterclaim-
      Defendant,

15cv0631
**ELECTRONICALLY FILED**

v.

STARR SURPLUS LINES INSURANCE
COMPANY,

      Defendant/Counterclaim-
      Plaintiff.

## Memorandum Order re: Motion for Summary Judgment

This case centers on an insurance coverage dispute between Plaintiff/Counterclaim-

Defendant, H.J. Heinz Company ("Heinz"), and its insurance provider, Defendant/Counterclaim-

Plaintiff, Starr Surplus Lines Insurance Company ("Starr").  Pending before this Court is Starr's

motion for summary judgment (doc. no. 119) regarding its claim for rescission of the insurance

policy which is being decided as "Phase One" of this matter (doc.  no. 125).  After careful

consideration of the motion (doc. no. 119), response (doc. no. 179), and reply thereto (doc. no.

187), and all supporting documents, Starr's motion will be DENIED, and Phase One of this

matter shall proceed to trial.

### I.      Factual Background

#### A. Heinz's Application for Insurance

In their submissions in support of and opposition to this motion, the Parties have set forth

221 paragraphs in their concise statements of material facts (95 from Starr and 126 from Heinz)

and the Parties dispute nearly all of them with citations to record evidence.  Doc. Nos. 129; 180;

and 188.  The Court has gleaned the following brief factual summary from the Parties'

submissions.

It is undisputed that Heinz submitted an application for insurance through its broker,

Aon, to Starr in late May 2014.  Starr Statement of Facts (doc. no. 121 at ¶¶ 9-10); Heinz's

Response to Starr's Statement of Facts (doc. no. 180  at ¶¶ 9-10).[1]  Ian Ascher, Heinz's Group

Leader of Global Insurance signed the application[2] on May 28, 2014.  Doc. No. 122, Exh. 6.

Starr points to Heinz's responses to two questions in the application.  Question 6e asked:

> Has the Applicant, its premises, products or processes been the
> subject of recommendations or complaints made by any
> recommendations or complaints made by any regulatory body,
> internal or third party audit over the past 12 months or have any
> fines or penalties been assessed against the Applicant by any food
> or similar regulatory body over the last 3 years.  If YES, please
> provide details as well as remedial action completed.

Heinz responded, "No."  Question 11a asked:

> In the last 10 years has the Applicant experienced a withdrawal,
> recall or stock recovery of any products or has the Applicant been
> responsible for the costs incurred by a third party in recalling or
> withdrawing any products, whether or not Insured or Insurable
> under an accidental and malicious contamination policy?  If YES,
> please complete the attached supplementary loss information sheet.

Heinz did not respond to this question on the application.  In the cover email, Heinz's

Aon broker stated: "We will provide updated loss information under separate cover."  Id.  On

June 6, 2014, Aon sent another XL Insurance form[3] signed by Ascher on May 28, 2014 which

---

[1] The Court acknowledges Heinz's reservations that it did not submit an application *solely* to Starr nor did it use a Starr application form.  Id.

[2] Heinz submitted an "XL Insurance" application form (doc. no. 131, Exh. 6) that is similar to, but not identical to its own insurance application form (doc. no. 131, Exh. 7).

[3] The first submission apparently omitted every other page of the application.

included a spreadsheet of the company's recall losses from 1998 to 2013 and a loss ratio

analysis.  Doc. No. 122, Exh. 11.

### B.  Alleged Misrepresentations

Starr summarizes the misrepresentations allegedly made by Heinz in its application for

insurance as:

> 1.  Heinz suffered four separate accidental contamination losses in the first half of 2014.  *None* was disclosed to Starr during the application process.
>
> 2.  Of the four 2014 events, one was a loss of about $12 million arising from the production and sale in China of baby cereal contaminated with levels of Nitrite that greatly exceeded . . . Chinese Government limits on Nitrite contamination in baby food. . . .
>
> 3.  [Three other 2014 losses]:  a recall of baby food in Canada (then estimated to be $600,000-$900,000), a recall of mislabeled pesto dip in New Zealand (then estimated to be $57,000), and a recall of canned spaghetti in New Zealand (then estimated to be $250,000).  The Canadian and one or both of the New Zealand losses followed complaints by the regulatory authorities in those countries. . . .
>
> 4.  In 2008, Heinz's San Diego facility, and product manufactured in that facility, were found to be contaminated with Listeria. . . . The facility was closed by order of the United States Government, twice, and the affected product was destroyed. The event was identified in the Heinz loss history that was submitted to Starr, but the "Gross Loss" associated with the event was said to be a null ($0) loss.  In fact, it resulted in a $12.7 million loss. . . .
>
> 5.  In July 2013, Heinz was fined by a Chinese food safety agency for a separate violation of Chinese food safety law.  Heinz disclosed the existence of that 2013 loss, but . . . Heinz did not disclose the existence of the fine.

Doc. no. 128 at 7-8 (internal citations omitted).

Heinz disputes whether any misrepresentations - - or omissions - - were made in its

application for insurance or in the contemporaneous discussions between its broker, Aon, and

Starr prior to Starr offering and issuing the insurance policy to Heinz.  Doc. No. 179 at 2-7.

Heinz also disputes that the four discreet items identified by Starr as misrepresentations were

material.  Doc. No. 179 at 8-13.

Heinz counters that Starr had actual notice of the information Starr contends was falsely

represented or withheld during the application process (doc. do. 179 at 4), and also contends that

Starr was on notice that it was receiving information for a defined period - - 1998 to 2013 - - and

that any omission of more recent information was due to Starr's failure to inquire.  Doc. No. 179

at 3.

II.      **Standard of Review**

A.  **Summary Judgment Standard**

Summary judgment is only proper when there is no genuine issue of material fact in the

case and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c)(2);

*Horn v. Thoratec Corp.*, 376 F.3d 163, 165 (3d Cir. 2004).  In reviewing a motion for summary

judgment, the role of the court is "not to weigh the evidence or to determine the truth of the

matter, but only to determine whether the evidence of record is such that a reasonable jury could

return a verdict for the nonmoving party." *Am. Eagle Outfitters v. Lyle & Scott Ltd.,* 584 F.3d

575, 581 (3d Cir. 2009).  If so, summary judgment will not be granted.

The district court must view all of the facts in the light most favorable to the non-moving

party, who is entitled to "every reasonable inference that can be drawn from the record," and if

"there is a disagreement about the facts or the proper inferences to be drawn from them, a trial is required to resolve the conflicting versions of the parties." *Reedy v. Evanson*, 615 F.3d 197, 210 (3d Cir. 2010) (quoting *Merkle v. Upper Dublin Sch. Dist.,* 211 F.3d 782, 788 (3d Cir. 2000) and *Peterson v. Lehigh Valley Dist. Council*, 676 F.2d 81, 84 (3d Cir. 1982)).  A party cannot, however, defeat a motion for summary judgment by pointing to fragmentary inferences that could be massaged to support his or her position.  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

### B. Rescission of Insurance Policy Under New York Law

Section 3105 of New York's Insurance Law sets forth the basic framework for rescission. N.Y. Ins. Law § 3105.  It states in relevant part that:

> No misrepresentation shall avoid any contract of insurance or defeat recovery thereunder unless such misrepresentation was material.
>
> *Id.* at § 3105(b)(1).

A misrepresentation is a false statement of past or present fact, "made to the insurer . . . at or before the making of the insurance contract . . ."  N.Y. Ins. Law § 3105(a).  Under New York law, both intentional *and* unintentional misrepresentations will void a contract of insurance if the misrepresentation is material.  *See Matter of Liquidation of Union Indem. Ins. Co. of New York*, 674 N.E.2d 313, 320 (N.Y. 1996)(specific intent is not required to rescind an insurance policy; even "an innocent failure to disclose a material fact is sufficient")(citation omitted); *Mutual Ben. Life Ins. Co. v. JMR Electronics Corp.*, 848 F.2d 30, 32 (2d Cir. 1988)(even an innocent misrepresentation will allow rescission).

The test for materiality of a misrepresentation is codified as:

> No misrepresentation shall be deemed material unless knowledge
> by the insurer of the facts misrepresented would have led to a
> refusal by the insurer to make such contract.

N.Y. Ins. Law § 3105(b).

To show that a misrepresentation is material, the insurer must present proof concerning its underwriting practices with respect to applicants with similar circumstances and establish that, but for the misrepresentation, it would have not issued the same policy. *Schirmer v. Penkert* 840 N.Y.S.2d 796, 799 (N.Y. App. 2d. Dept. 2007). Generally, the question of the materiality of a misrepresentation is an issue of fact. *Fidelity and Guar. Ins. Underwriters, Inc. v Jasam Realty Corp.*, 540 F.3d 133 (2d Cir. 2008); *Cont'l Cas. Co. v. Marshall Granger & Co., LLP*, 6 F. Supp. 3d 380, 390 (S.D.N.Y. 2014) (materiality usually must be determined by the fact-finder). Conclusory statements by insurance company employees that the policy would not have been issued will not suffice to prove materiality on a motion for summary judgment. *Cont'l Cas. Co. v. Marshall Granger & Co., LLP*, 921 F. Supp. 2d 111, 128 (S.D.N.Y. 2013).

In summary, Starr must prove these elements to state a *prima facie* claim for rescission under N.Y. Ins. Law § 3105: (1) that Heinz made a false statement of past or present fact at or before the making of the insurance contract; and (2) that the representation was material in that Starr relied upon the misrepresentation(s) and would not have issued the policy but for the misrepresentation(s). N.Y. Ins. Law § 3105; *Cont'l Cas. Co.*, 6 F. Supp. 3d at 390; *Schirmer v. Penkert,* 840 N.Y.S.2d 796, 799 (N.Y. App. 2d Dept. 2007).

**III.**     **Discussion**

Judging the facts in the light most favorable to Heinz, as the non-moving party, and after reviewing the summary judgment materials including thousands of pages of appendices, the Court finds that numerous factual issues preclude a finding of summary judgment in this case on the Rescission Counterclaim, and the Affirmative Defenses.  Moreover, the question of materiality of the misrepresentations and/or omissions/silence is appropriately to be resolved by a fact-finder.

Heinz disputes whether any misrepresentations - - or omissions - - were made in its application for insurance or in the contemporaneous discussions between its broker, Aon, and Starr prior to Starr offering and issuing the insurance policy to Heinz.  Doc. No. 179 at 2-7. Even assuming arguendo that the four discreet items identified by Starr as misrepresentations are false "statement[s] as to past or present fact[,]" summary judgment must be denied because the Parties dispute the materiality of each item and submit voluminous evidence in support of their respective positions.

For example, Heinz disputes Starr's assertion that it prepared its own "loss ratio analysis" prior to issuing the policy, citing metadata evidence that indicates the loss ratio analysis referred to by Starr as being created by a "rater" program was created on July 28, 2014 - - a month after the policy was sold.  Doc. No. 180 at ¶¶ 48-51.  Heinz disputes that Starr utilized the "rater" in determining whether to issue the policy at all.  Doc. No. 180 at ¶¶ 52-55.  Starr's evidence in support of this assertion is testimony from its lead underwriter.  Id.  Heinz's evidence is metadata from the document.  Id.  Although Starr argues in its Reply that the metadata evidence does not show what Heinz contends, Starr is asking the Court to consider the weight and sufficiency of

this evidence in the light most favorable to it, the moving party - - which the Court must not do on a motion for summary judgment.

Heinz also points to some evidence, including Starr's own underwriting policies, which dispute: 1) whether it is usual and customary for underwriters to utilize the most recent loss information when conducting a loss analysis and whether Starr's underwriters were acting consistently with that custom when analyzing Heinz's loss information (rendering the most recent loss information immaterial) (doc. no. 180 at ¶¶ 86-93); and 2) whether Starr's underwriters actually consider losses which would not be covered under the policy when determining whether or not to insure, as asserted by Starr. Doc. No. 180 at ¶¶ 95-98.

These disputes are factual and therefore cannot be resolved by the Court on a motion for summary judgment.

## IV. <u>Conclusion</u>

Judging the facts in the light most favorable to the non-moving party, the Court finds that summary judgment is precluded on the Rescission Counterclaim (and Affirmative Defenses) because numerous genuine issues of material facts must be resolved by an advisory jury. *See Mercantile & General Reinsurance Co. v. Colonial Assur. Co*., 604 N.Y.S.2d 492 (N.Y. 1993)(counterclaim for rescission based upon material misrepresentation in breach of contract action is equitable and, therefore, jury's verdict is advisory on that issue). Specifically, the issue of whether the misrepresentations, if any, were material, requires factual findings. *Jasam Realty Corp*., 540 F.3d 133 (2d Cir. 2013). The Court will use the jury in an advisory capacity to weigh the differing versions of the factual narratives. Defendant's motion for summary judgment (doc. no. 119) is therefore DENIED.

The Parties shall diligently prepare for trial, set for December 14, 2015, after fully participating in a second mediation session before neutral David White on December 2, 2015 as set forth in the Court's Order at Doc. No. 136. To that end, the Parties shall file by November 17, 2015 at 9:00 a.m. a notice of mediation setting forth the date of the mediation, and the names and titles of the persons with full settlement authority who will be in attendance.

s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc: All ECF-Counsel of Record